IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PORT LYNCH, INC., a Hawaii corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMSUNG FIRE & MARINE INSURANCE CO., LTD.<br><br>　　　　　Defendant. | CIVIL NO. 11-000398 DKW/BMK<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT |

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
<u>COUNTER MOTION FOR SUMMARY JUDGMENT</u>**

**<u>INTRODUCTION</u>**

Before the Court are Defendant Samsung Fire & Marine Insurance Co. Ltd.'s Motion for Summary Judgment, filed May 10, 2013 ("Defendant's Motion"), and Plaintiff Port Lynch, Inc.'s Counter Motion for Summary Judgment, filed June 27, 2013 ("Plaintiff's Motion"). The Court heard argument on the motions on July 19, 2013. Appearing at the hearing on behalf of Plaintiff was Brian Ho, Esq., and appearing on behalf of Defendant was Michael Nakano, Esq. After careful

1

consideration of the supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, Defendant's Motion is hereby GRANTED and Plaintiff's Motion is hereby DENIED.

## BACKGROUND

Plaintiff filed a Complaint for Declaratory Relief and Monetary Damages on June 21, 2011, seeking a declaration that the July 18, 2010 sinking of Plaintiff's longline fishing vessel, the Tanya Rose O.N. 545579 ("Vessel"), is a covered event under a maritime insurance policy issued by Defendant. The facts and circumstances relating to the loss of the Vessel are not disputed. The Vessel experienced a fire in a storage room while at sea on July 15, 2010, which disabled the bilge high water alarm. On July 18, 2010, the Vessel lost electric power and began to take on water, and the main generator was shut down to protect it from the rising water. Attempts at pumping out the water were not successful, and the captain and crew were forced to abandon the Vessel that afternoon. Lynch Decl. ¶¶ 16-18; Def.'s Ex. I (USCG 2692 Form).

Defendant hired Mark Knutson of Offshore Marine Surveyors ("Offshore") to investigate the loss. Mr. Knutson had previously conducted a condition survey ("Survey") of the Vessel on August 2, 2007 in order for Plaintiff to

obtain insurance coverage from Defendant.   The Survey included a list of twenty-one recommendations, including *inter alia*:

> 1.   Vessel is due for dry docking, recommend audio gauging the wind and water strakes, shaft alley and any other suspect areas found during inspection.   Renew antifouling, sacrificial zincs and service all thru-hull valves.   Carefully examine the hull penetration, shut-off valve, and piping for the recirculating seawater system.
>
> 2.   While in drydock, the intermediate shaft and tailshaft should be drawn for inspection and checked for straightness and the couplings trued.   Renew the cutlass bearings at the same time.
> 3.   The couplings on the forward end of the tailshaft and the aft end of the intermediate shaft in the shaft alley are deteriorated and should be replaced.

Def.'s Ex. A (8/6/07 Survey Report) at 010-011.   The Survey further states:

"**Subject to addressing the Recommendations contained in this report**, the vessel is considered fit for her intended service, suitable for use fishing offshore and can be recommended for service. . . .   No warranties are expressed or implied concerning the vessel's seaworthiness."   *Id.* at 009, 011 (emphasis in original).

On August 11, 2007, Defendant issued to Plaintiff an insurance policy that included Hull & Machinery and Protection & Indemnity coverage, with an annual premium of $26,678.08, and a coverage period from August 11, 2007 through August 11, 2008.   Robert Gordon of Business Insurance Services, Inc.

3

served as Defendant's authorized insurance agent and worked with Plaintiff on obtaining the coverage. The Hull & Machinery portion insured against loss or damage to the Vessel, and included a Schedule containing a section entitled "Clauses, Endorsements, Special Conditions and Warranties." The Schedule includes the following language:

> Warranted every three year condition survey by reliable condition surveyors and all their recommendations be complied with within 30 days from attachment: Vessel surveyed before and including July 2004 should be surveyed again.

Def.'s Ex. C (8/11/07 Policy) at 002. Under the section entitled "Fishing Vessels Special Conditions," the policy states:

> <u>Warranties:</u> It is a condition of this insurance that the Assured shall comply strictly with the warranties set forth in this policy. Breach of any said warranties shall render this policy null and void except as held covered or waived in writing by underwriters.
> . . . .
> 3:     Warranty of Seaworthiness: Warranted that at the inception of this policy the vessel shall be in a seaworthy condition and thereafter during the currency of this policy the Assured shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight and properly manned, equipped and supplied.
> . . . .
> 14.     Misrepresentation: This insurance shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject hereof or in case of any fraud, attempted fraud or false swearing by the

4

>  Assured touching a matter relating to this insurance or the subject thereof, whether before or after a loss.

Def.'s Ex. C at 003-004.

On November 8, 2007, Plaintiff completed a Survey Recommendation Compliance Statement and returned it to Mr. Gordon, the insurance broker. Plaintiff's President Michael C. Lynch, III, wrote on the Survey Recommendation Compliance Statement that the Survey recommendations had been complied with, except for conditions 1, 2, and 3. Mr. Lynch wrote: "Dry dock scheduled for March . . . . Shaft coupling will be inspected while in dry dock – but at present appears to be no problem." Def.'s Ex. D (Survey Recommendation Compliance Statement). According to Plaintiff, the Survey Recommendation Compliance Statement was a form that Mr. Gordon created and maintained, and that was not provided to Defendant.

The Vessel did not go into dry dock in March 2008 because Plaintiff "did not have the cash." Def.'s Ex. B (1/25/13 Lynch Dep.) at 163-64. The Vessel eventually was dry-docked on June 30, 2010, but the majority of the remaining recommendations from the 2007 Survey went unaddressed. The sacrificial zincs, service of the through-hull valves, hull penetrations and piping for the seawater were

addressed, but the audio gauge was not, nor were any portions of recommendations 2 and 3 relating to the various shafts. *Id.* at 165-66.

Plaintiff renewed its insurance with Defendant in 2008 and 2009; those policies contained the same warranties set forth in the original 2007 policy. Plaintiff did not notify Defendant or Mr. Gordon that it had not dry docked the Vessel in March 2008 or that it had not completely addressed the three outstanding Survey recommendations.

Following the loss of the Vessel on July 18, 2010, Offshore interviewed the Vessel's crew and took written statements. Defendant then learned that Plaintiff had not complied with the 2007 Survey recommendations and denied Plaintiff's claim for the loss of the Vessel based on a breach of the warranty of compliance with survey recommendations, the warranty of seaworthiness, and the warranty against misrepresentation.

Plaintiff's Complaint seeks a declaratory judgment that the loss is a covered event, and alleges breaches of contract and the covenant of good faith and fair dealing. Defendant seeks summary judgment on all of the counts in the Complaint. Plaintiff asks the Court to deny Defendant's Motion and to grant its own Motion an all counts, and award Plaintiff punitive damages and attorney's fees.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

### I. Count I: Declaratory Judgment

Under Hawai'i law, courts look to the language of the insurance policy to determine the scope of the parties' duties. *See Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994).[1] Here, each of the policies issued between 2007 and 2009 contain the same warranty compliance language. Under the section entitled "Fishing Vessels Special Conditions," the policy states:

> Warranties: It is a condition of this insurance that the Assured shall comply strictly with the warranties set forth in this policy. Breach of any said warranties shall render this policy null and void except as held covered or waived in writing by underwriters.

---

[1] The regulation of marine insurance is left to the states unless there exists a "judicially established federal admiralty rule governing" the question. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955); s*ee also Yu v. Albany Ins. Co.*, 281 F.3d 803, 806 (9th Cir. 2002) ("Disputes arising under marine insurance contracts are governed by state law, in this case Hawaii law, unless an established federal rule addresses the issues raised, or there is a need for uniformity in admiralty practice."). The Court notes that the application of the *uberrimae fidei* doctrine discussed herein is established federal admiralty law. *See Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 650 (9th Cir. 2008).

Def.'s Ex. C at 003. In general, maritime law requires strict compliance with marine insurance warranties. *See Yu v. Albany Ins. Co.*, 281 F.3d 803, 809 (9th Cir. 2002) ("'In marine insurance, there is historically no requirement that the breach of warranty relate to the loss, so that any breach bars recovery even though a loss would have happened had the warranty been carried out to the letter.'") (quoting 6 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 83:20 (3d ed. 1995)); *see also id.* ("Indeed, this rule is in place in most states, and has been widely adopted largely because of the 'recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the . . . warranties made by insureds regarding their vessels' condition and usage.'") (quoting *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 31-32 (2d Cir. 1999)).

### A. **Survey Compliance Warranty**

The Court first addresses the Survey compliance warranty. Under the Schedule heading entitled "Clauses, Endorsements, Special Conditions and Warranties," the policy states:

> Warranted every three year condition survey by reliable condition surveyors and all their recommendations be complied with within 30 days from attachment: Vessel surveyed before and including July 2004 should be surveyed again.

Def.'s Ex. C at 002.

It is undisputed that Plaintiff did not comply with all of the recommendations contained in the August 2007 Survey "within 30 days" of Defendant's 2007 policy attaching to the Vessel.  By November 2007, when Plaintiff completed the Survey Recommendation Compliance Statement provided by Mr. Gordon, full compliance with the recommendations still had not occurred. In fact, Plaintiff's President reported that the dry docking and related work, which was included among the August 2007 Survey Recommendations, would not occur until March 2008.  Def's Ex. D.  March 2008, however, came and went still without the requisite work being done.  Indeed, the Vessel was not dry docked until more than two additional years later – in June 2010 – when, despite the dry docking, it is undisputed that Plaintiff still did not address all of the outstanding Survey recommendations (*e.g.*, audio gauging).  These outstanding recommendations, moreover, were *never completed* prior to the loss of the Vessel in July 2010. Therefore, there can be no dispute that Plaintiff did not satisfy the language in the policy requiring compliance with all Survey recommendations.

Instead, Plaintiff contends that the Survey compliance requirement in the policy is not a warranty, and even if it is, it is not enforceable.  The Court disagrees.

> Hawaii law recognizes that insurance policies in general are to be construed in accord with the reasonable expectations of the parties, but those expectations must be objectively reasonable, and this rule will not permit an insured to avoid limitations on coverage that are neither ambiguous nor inconspicuous.  *See, e.g., Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 684 P.2d 960, 964 (1984); *Fortune v. Wong*, 68 Haw. 1, 702 P.2d 299, 305-06 (1985).   When, as here, there is no ambiguity, the policy provision is to be enforced according to its plain terms. *See Barber v. Chatham*, 939 F. Supp. 782, 786-87 (D. Haw. 1996) (applying Hawaii law).

*Yu*, 281 F.3d at 809-10.   Applying these principles, the Court concludes that Hawai'i courts would apply the present Survey recommendation warranty, which is neither ambiguous nor inconspicuous, according to its terms.   The Survey warranty clearly states that it is a condition of insurance that the insured will comply with all survey recommendations.   The warranty is not vague or ambiguous.   Nor is it inconspicuous; it is listed on the first page of the policy under "Clauses, Endorsements, Special Conditions and Warranties."   In fact, it begins with the word "Warranted."

        To the extent Plaintiff argues that this warranty should not void the policy because it did not receive a copy of the first policy until November 8, 2007 – 59 days after coverage was bound–its argument is unavailing.   It is undisputed that Defendant did not void the warranty or cancel the policy at the termination of the 30-day period for survey non-compliance.   There is, however, no evidence that

10

Defendant waived the Survey compliance warranty or granted an open-ended extension for compliance. By the terms of the policy, a warranty waiver could only be approved in writing. *See* Def.'s Ex. C at 003 ("Breach of any said warranties shall render this policy null and void except as held covered or waived in writing by underwriters."). No such writing exists. Nor is it objectionably reasonable for Plaintiff to have interpreted Defendant's failure to cancel the policy in late 2007 as an open-ended extension of time. In November 2007, Plaintiff affirmatively represented that it would comply with all Survey recommendations by March 2008, when it apparently scheduled the Vessel for dry docking. Defendant's inaction at that point can fairly be viewed as an extension to comply with the Survey recommendations by March 2008. Plaintiff, however, did not meet Defendant's implicit extension then or at any other time. Plaintiff's suggestion that Defendant's inaction amounted to an agreement that Plaintiff could satisfy the Survey recommendation requirement whenever Plaintiff chose to is not only unreasonable, but would vitiate the specific language in the policy that all Survey recommendations had to be complied with in order for coverage to be effective. *See* Def.'s Ex. B (1/25/13 Lynch Dep. Tr.) at 118; Lynch Decl. ¶ 7.

    In sum, the Court concludes that Plaintiff is not entitled to summary judgment on this issue. To the contrary, Plaintiff breached the Survey compliance

11

warranty. The Court next turns to the effect of Plaintiff's failure to disclose that the Vessel was never brought into compliance with the Survey recommendations.

  **B.** *<u>Uberrimae Fidei</u>* **<u>and Misrepresentation Warranty</u>**

  In addition to breaching the Survey compliance warranty, Defendant claims that Plaintiff's failure to disclose that the Survey recommendations were not addressed violated the policy's express warranty against misrepresentation and the maritime doctrine of *uberrimae fidei*. Under the warranty entitled "Fishing Vessels Special Conditions," the policy states:

> 14. Misrepresentation: This insurance shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject hereof or in case of any fraud, attempted fraud or false swearing by the Assured touching a matter relating to this insurance or the subject thereof, whether before or after a loss.

Def.'s Ex. C at 004.

  At no point in or after March 2008, when it failed to complete the dry docking and related work that it had indicated would be done, or during the policy renewals in August 2008 and August 2009, did Plaintiff advise Defendant that the Vessel had not entered dry dock in 2008, or that the outstanding Survey recommendations had not been addressed. Without a doubt, this is a "material fact or circumstance concerning this insurance," as set forth in the policy. Survey

12

compliance was a condition of obtaining insurance. "A non-disclosed fact is material if it would have affected the insurer's decision to insure at all or at a particular premium." *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 655 (9th Cir. 2008) (internal quotations omitted). Thus, Plaintiff breached the policy's warranty against misrepresentation.

        This is especially so in light of the doctrine of *uberrimae fidei*, which requires a marine insurance applicant, *even if not asked*, to reveal every fact within his or her knowledge that is material to the risk. *Id.* "An insurer may rescind an insurance contract if it can show either intentional misrepresentation of a fact, regardless of materiality, or nondisclosure of a fact material to the risk, regardless of intent." *Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 420 (9th Cir. 1998) (internal quotations omitted).

        In *Reliance Ins. Co. v. McGrath*, 671 F. Supp. 669 (N.D. Cal. 1987), the district court ruled that a maritime insurance policy was void and unenforceable where the insured did not disclose the "deteriorating" of the vessel upon renewal of the policy. The court noted that the "law of marine insurance imposes a duty upon the assured to disclose voluntarily to the insurer, even though no inquiry is made, every material fact and circumstance within his knowledge and which is unknown (or fairly presumed to be unknown) to the insurer, and failure to do so—intentionally

or otherwise—allows the insurer to have the contract declared void *ab initio*." *Reliance Ins. Co.*, 671 F. Supp. at 677. *Reliance Insurance Co.* held that an insured "must disclose facts to the insurer relating to seaworthiness. [The insured's] failure to disclose the deteriorating and unseaworthy condition of [the vessel] when he renewed the policy constituted nondisclosure of a material fact and allowed [the insurer] to rescind the contract." *Id.* (citation omitted). The same is true here. Plaintiff's silence regarding its failure to dry dock the Vessel, particularly after representing that it would do so, and failure to comply with all of the Survey recommendations when it twice renewed the policy constitutes non-disclosure of a material fact and allows Defendant to rescind coverage.[2]

      Based on Plaintiff's breach of the Survey compliance and misrepresentation warranties, the Court concludes that Defendant is entitled to summary judgment with respect to Count I for declaratory relief. Because the Court finds that these warranties were breached, the Court does not reach Defendant's alternative grounds for policy avoidance based on the warranty of seaworthiness.

---

[2] *Uberrimae Fidei* places the burden on the assured to come forward with information material to the insurer's risk. It is not the obligation of the insurer, as Plaintiff here contends, to affirmatively inquire.

## II. Count II: Breach of Contract

Plaintiff alleges that Defendant breached its contract with Plaintiff when it wrongfully denied Plaintiff's claim under the policy. To succeed on its breach of contract claim, Plaintiff must demonstrate "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) when and how Defendants allegedly breached the contract." *Honold v. Deutsche Bank Nat'l Trust Co.,* 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010) (citing *Otani v. State Farm Fire & Cas. Co.*, 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("In breach of contract actions, . . . the complaint must, at a minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient.")). Here, Plaintiff fails to establish either that it performed under the contract or that Defendant breached the contract.

As set forth above, Plaintiff did not perform its obligations under the policy–it did not comply with the Survey compliance warranty or the warranty against misrepresentation. Accordingly, Plaintiff may not recover for Defendant's alleged failure to pay its claim under the policy, and Defendant is relieved of any contractual obligation to cover the loss. *See Otani*, 927 F. Supp. at 1337 ("In Hawaii, it is well-established that a party cannot recover for a breach of contract

15

where she fails to comply with the contract herself."). Defendant is entitled to summary judgment on Count II for breach of contract.

## III. Count III: Breach of Good Faith and Fair Dealing

Finally, the Court finds that Defendant is entitled to summary judgment on Plaintiff's Count III for breach of the covenant of good faith and fair dealing. Hawai'i "recognizes a bad faith cause of action in the first-party insurance context." *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 127, 920 P.2d 334, 341 (1996). In *Best Place, Inc.*, the Hawai'i Supreme Court discussed case law, statutory provisions, and legislative history to find that "there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action." *Id.* at 132, 920 P.2d at 347. As explained in *Best Place, Inc.*, to prove bad faith:

> [T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in payment of benefits will warrant recovery for compensatory damages. . . . However, conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith. In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages. Rather, the decision not to pay a claim must be in "bad faith."

*Id.* at 133 (citations omitted). "While questions of the 'reasonableness' of a party's action are usually inappropriate for adjudication on summary judgment, a 'trial court is "under a duty" to decide this question as a matter of law where the facts are undisputed or are susceptible of only one reasonable interpretation.'" *Apana v. TIG Ins. Co.*, 504 F. Supp. 2d 998, 1007 (D. Haw. 2007) (quoting *Wittig v. Allianz*, 112 Hawai'i 195, 200, 145 P.3d 738, 743 (2006)); *see also Gov't Employees Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1035 (D. Haw. 2001) (granting insurer's motion for summary judgment upon finding that the insurance company acted reasonably and did not act in bad faith when denying coverage).

The Court finds as a matter of law that Defendant did not engage in bad faith in handling Plaintiff's claim. The evidence presented shows that Defendant investigated Plaintiff's loss claim by hiring Mr. Knutson of Offshore. Mr. Knutson interviewed the Vessel's captain and crew and learned that the outstanding 2007 Survey recommendations had not been addressed before the Vessel sank. Mr. Knutson's report to Defendant following the investigation states:

> In my opinion, Capt. Lynch did not comply with recommendations 1, 2, & 3 in the most recent survey. These recommendations would be considered directly related to the current casualty. A proper dry docking for any vessel that hadn't been out of the water in nine years would consist of more than just welding a few sacrificial zincs on the bottom.

17

Def.'s Ex. J (8/5/10 Preliminary Advice, Rpt. No. 10-1590) at 070.  Mr. Knutson further advised Defendant as follows:

> Yes, it is our opinion that the warranty was breached.  We recommend underwriters issue a Reservation of Rights letter to the assured giving him the opportunity to show evidence (i.e. invoices, receipts, audio gauging reports, bottom survey, etc.) that he has complied with all of the recommendations in the Aug. 2007 condition and value survey.
> . . . .
> Mr. Lynch already understands from conversations with me that he must provide evidence that he complied with the specific recommendations related to the underwater hull and associated running gear of the "TANYA ROSE" in the most recent condition and value survey of Aug. 2007.

Def.'s Ex. K (8/13/10 and 8/15/10 Emails from Knutson) at 063-064.  Thus, Defendant did not deny Plaintiff's claim without undertaking a diligent investigation.  Nor did Defendant deny Plaintiff's claim without providing Plaintiff an opportunity to show compliance with the policy's warranty condition, a showing that, as discussed above, Plaintiff could not make.

Finally, Defendant's interpretation of the policy denying coverage was reasonable, and thus does not support a finding of bad faith.  *See Best Place, Inc.*, 82 Haw. at 133, 920 P.2d at 347 ("[C]onduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith.").  As set forth previously, Defendant's denial of the claim based on Plaintiff's breach of specific

warranties is supported by the law and facts in this matter, and therefore, was reasonable and not in bad faith. Accordingly, Defendant is entitled to summary judgment with respect to Count III.

To the extent Plaintiff seeks summary judgment on its claims for attorney's fees and costs, reimbursements of premiums paid, or punitive damages, or on any basis not specifically detailed herein, Plaintiff's Motion is DENIED.

## CONCLUSION

On the basis of the foregoing, the Court DENIES Plaintiff's Counter Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI'I, October 24, 2013.



Derrick K. Watson
United States District Judge

---
Port Lynch v. Samsung Fire & Marine Ins., CV 11-00398 DKW/BMK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT